GROSSCUP & COMPANY *et al. v.* H. C. ZOGG *et al.*

(No. 8503)

Submitted February 24, 1937. Decided March 30, 1937.

*S. L. Flournoy,* for appellant.
*F. M. Stambaugh,* for H. C. Zogg.

KENNA, PRESIDENT:

Grosscup & Company, a corporation, Paul B. Grosscup and Nan Nash Grosscup filed their bill of complaint in the Circuit Court of Kanawha County making H. C. Zogg, B. J. Estes, E. G. Smith, Benson Gas Company and Royal Gas Company parties defendant. The bill al-

leged that a partnership comprised of Paul B. Grosscup, E. G. Smith, B. J. Estes and, later, H. C. Zogg had drilled a well for oil and gas on a tract of land known as the S. M. Burdette farm in Kanawha County, which had been transferred by the partners for all of its capital stock to a corporation named Royal Gas Company, Nan Nash Grosscup being added to the number of stockholders, evidently by taking shares that would otherwise have gone to Paul B. Grosscup. Any gas that might be discovered had been sold to the plaintiff Grosscup & Company, a corporation. The bill alleged that H. C. Zogg, B. J. Estes and E. G. Smith, being the owners of seventy-five per cent of the common stock of Royal Gas Company, through a conspiracy, the purpose of which was to defraud the plaintiffs, had caused the assets of Royal Gas Company to be transferred to a corporation organized by them and known as the Benson Gas Company for a totally inadequate consideration. The prayer of the bill was that this conveyance from Royal Gas Company to Benson Gas Company might be set aside, that the plaintiffs might have an accounting for the proceeds of gas produced, and for other and general relief. The questions before us do not have to do with this bill of complaint.

Union Gas Corporation intervened by petition in this suit, alleging that seven joints of ten-inch casing and twenty-four joints of eight and a quarter-inch casing that it owned and had stored on the M. P. Starcher farm near Otto, in Roane County, had, without its authority and consent, been removed by B. J. Estes, acting under the instructions of H. C. Zogg and for and on behalf of the co-partnership composed of Paul B. Grosscup, E. G. Smith, B. J. Estes and H. C. Zogg, and had been taken to the S. M. Burdette farm in Kanawha County, where the eight and a quarter-inch casing had been used in the well being drilled by the partnership, which had appropriated the ten-inch casing as well. Process upon the petition was waived, and H. C. Zogg and E. G. Smith filed their joint answer thereto in which they denied all of its averments. Depositions were taken and after the depositions were in, an issue out of chancery was ordered and tried

to a jury. Upon the jury having found for the defendants, the decree of the court accordingly dismissed the petition. From that decree the petitioner, Union Gas Corporation, prosecutes this appeal. The sole assignment of error turns upon the sufficiency of the proof. No question as to procedure, other than the propriety of the issue out of chancery, is raised, and this decision is not to be taken as approving otherwise the procedure that was followed in this case.

Appellant insists that the verdict of the jury is against the clear and unmistakable preponderance of the testimony, and that a decree should have been entered in its favor upon its petition without an issue out of chancery.

The directing of issues out of chancery in order that courts of equity may have the assistance of the machinery of the law court in deciding matters of fact upon conflicting evidence is a device intended to satisfy the conscience of the trial chancellor. In the absence of statute, the issues to be tried are certified to the law side, tried there, and certified back. Our statute (Code 56-6-4) provides for their trial in the equity court before a jury.

Upon trial of an issue out of chancery, it is not the approved practice to require the jury to render a general verdict. The proper practice is to submit special interrogatories to the jury, upon the answers to which the decree of the trial chancellor can be based. 10 R. C. L. 529. In the case before us, there were no special interrogatories, but the entire case was submitted to the jury, and the decree was based upon its general verdict for the defendants. We pass over any question that may exist as to this procedure because no question was raised by either side at the trial or here.

It would seem plain that, inasmuch as the very purpose of an issue out of chancery is to permit decisions to be made upon conflicting proof by a more suitable fact-finding tribunal, the actual presence of the witnesses before the jury where credibility can be weighed from demeanor, tone and appearance would be an important factor. Of course, upon a proper showing of non-residence or similar basis that would justify the use of

depositions in an action, their use in an issue out of chancery is proper. Here, apparently, the only thing that the jury had before it was proof taken by deposition while the case remained on the equity side, and that, too, in a case where credibility of witnesses apparently was of vital significance. The effect of this was to eliminate from the consideration of the jury some of the more important elements entering into the decision of issues of fact upon contradictory proof. In at least one Virginia case this has been considered error. *Powell & Wife* v. *Manson*, 22 Gratt. (Va.) 177, 189. But here again, we find no question raised and therefore pass the point.

We think that it does not require the citation of authority to sustain the proposition that if, when the issue out of chancery is suggested, the proof then taken is in such state as to show that one side or the other clearly preponderates, the issue should not be ordered. The consideration of the proof before us, therefore, will decide whether the issue was properly ordered and, also, whether the proof before the jury preponderated so clearly in favor of petitioner as to require setting aside the verdict in favor of the defendants. Sufficient recital of the evidence to decide these questions follows:

B. J. Estes testified that at the instruction of H. C. Zogg, who told him that he had made an arrangement with the Union Gas Corporation therefor, he went to the Starcher farm in Roane County and removed the casing in question, taking it to the S. M. Burdette farm in Kanawha County. Here, he says, the eight and a quarter-inch casing was used in the well, and the ten-inch casing, also at the instruction of Zogg, was taken to the National Supply Company and sold for one dollar a lineal foot, the proceeds going to Zogg's account. He testified that this was done before Zogg became a member of the partnership.

Rudolph Burdette testified that he went with Estes, "just for the trip," to a farm in Roane County, the name of which he did not know, but which was reached when they "turned off this side of Spencer." Burdette testified to the removal of the casing from this farm and

stated that a part of it was used in the S. M. Burdette well, and a part of it was stored on the Copenhaver farm about a mile distant. He says nothing about any part of it having been taken to the National Supply Company.

L. J. Botkins, known as Lovell Botkins, also testified that he went with Estes to the Starcher farm in Roane County and brought two loads of casing with a one and a half ton truck to the S. M. Burdette farm in Kanawha County where they unloaded the ten-inch casing at one place and the remainder at another, stating that the two places where the casing was unloaded were twenty-five or thirty feet apart.

Other testimony was offered on behalf of the petitioner, but most of it does not relate to the disputed question of fact.

The testimony of H. C. Zogg and of Raymond Zogg, his nephew employed by him at the time in question, is directly contradictory to the testimony of the petitioner.

Raymond Zogg testified that he was present in the office of H. C. Zogg in the summer of 1931 and heard him instruct B. J. Estes to go to Putnam County and there to procure thirty joints of eight and one-quarter-inch casing which Estes wished to borrow from H. C. Zogg; that he was present when part of this casing was procured in Putnam County by Estes and also when a part of it was taken to the S. M. Burdette farm in Kanawha County, and that all of the casing that was loaded by Estes in Putnam County was taken to the Burdette farm in Kanawha County.

H. C. Zogg testified that he knew nothing about the removal of any casing from the Starcher farm in Roane County; that the eight and a quarter-inch casing used in the Burdette well in Kanawha County was hauled by Estes from Putnam County, as was the ten-inch casing sold to his account to the National Supply Company. He denied having given Estes any instructions to remove casing from the Starcher farm.

Under well know principles that do not require the citation of authority, we are of the opinion that, in view

of this irreconcilable testimony, it would be improper for this court to disturb the finding of the jury on the issue out of chancery. Neither do we think that this record shows error in the determination of the trial court to order an issue out of chancery. The statute (Code 56-6-4) confers a broad discretion in this respect. There were no affidavits filed in this case such as the statute contemplates when an issue out of chancery is to be justified in advance of the taking of proof. The proof seems to have been taken entirely by depositions, and apparently, the trial court had the benefit of inspecting it before the issue out of chancery was ordered. In view of the diametric conflict and the irreconcilable contradictions in this evidence, it certainly does not appear clearly that the trial chancellor abused the discretion with which the statute vests him to order an issue out of chancery when it appears from proof taken that the decision of the case will rest upon findings to be made upon conflicting testimony.

Finding no reversible error in the record before us, the decree of the Circuit Court of Kanawha County will be affirmed.

*Affirmed.*